Dylan D. Grimes (SBN 302981)
Susana C. Cendejas (SBN 236613)
**GRIME LAW LLP**
11846 Ventura Blvd., Ste 200
Studio City, CA 91604
Telephone: (310) 747-5095
dgrimes@grimelaw.com
scendejas@grimelaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| John Drinkwater,<br>Plaintiff,<br>v.<br>Trader Joe's Company, and DOES 1-10,<br>Defendants. | Case No.<br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff John Drinkwater complains of Trader Joe's Company, a California Corporation (Trader Joe's or Defendant), and DOES 1 through 10, and alleges as follows:

1. Defendant discriminates against individuals with disabilities in the full and equal enjoyment of their goods, services, facilities, privileges, advantages, and accommodations in violation of the ADA and its implementing regulations.

2. In enacting the Americans with Disabilities Act of 1990 ADA, Congress intended that the Act "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and provide broad coverage. 42 U.S.C. § 12101(a)(1).

3. Individuals with disabilities include individuals who are deaf, hard of hearing, or hearing-impaired. The U.S. Equal Employment Opportunity Commission (EEOC) has stated that it uses ADA statutory terminology when referring “inclusively to individuals who are deaf or hard of hearing, as well as those who have other hearing conditions, such as tinnitus and sensitivity to noise.”[1] The U.S. Department of Justice has stated that “businesses have formal and informal policies, practices, and procedures. However, sometimes they can make it difficult or impossible for a customer with a disability to access goods and services.” That is why the ADA requires businesses to make “reasonable modifications” to their usual ways of doing things when serving people with disabilities, such as those with hearing-related disabilities. “Most modifications involve only minor adjustments in policies.”[2]

4. Retailers and national companies—including but not limited to Walmart, Starbucks, and Aldi (a company with strong ties to Trader Joe’s)—have implemented reasonable modifications to their usual ways of doing things when serving people with hearing-related disabilities by creating sensory-friendly, quiet, and sensory inclusive hours for customers with tinnitus, hyperacusis, and other neurological and sensory processing disorders, including those who may use devices (such as hearing aids) which can experience interference from unwanted background noise and reverberation. These reasonable modifications include sensory friendly hours with no music, reduced scanner beeps and announcement amplification, and/or installing acoustic panels to help reduce

---

[1] U.S. Equal Employment Opportunity Commission, Hearing Disabilities in the Workplace and the Americans with Disabilities Act, https://www.eeoc.gov/laws/guidance/hearing-disabilities-workplace-and-americans disabilities-act.

[2] U.S. Department of Justice, Civil Rights Division, ADA Update: A Primer for Small Business (Feb. 28, 2020), https://www.ada.gov/resources/title-iii-primer/.

reverberation and background noise. These modifications create a more inclusive experience for disabled guests (and employees), providing patrons with equal access to Title III businesses.

5. Defendant has failed to ensure the accessibility of Trader Joe's stores, and, as a result, individuals with disabilities, including those with hearing loss and hearing-related disabilities, who experience interference from unwanted background noise, acute noise, reverberation, and require noise reduction, cannot access Defendant's stores, enjoy their services, or take advantage of the benefits of in-person grocery shopping at Trader Joe's.

6. Such discrimination persists notwithstanding the existence of readily available, well-established, reasonable modifications for retailers to serve disabled individuals.

7. Plaintiff has filed this lawsuit because Defendant has discriminated against Plaintiff. Plaintiff further alleges that Defendant has a policy of discriminating against individuals with disabilities, including those with hearing loss and hearing-related disabilities, who experience interference from unwanted background noise, acute noise, reverberation, and require noise reduction, and therefore has engaged in a pattern or practice of discrimination. Such discrimination raises issues of general public importance. Plaintiff seeks injunctive relief.

## PARTIES

8. Plaintiff John Drinkwater is an individual currently residing in the state of Arizona living with physical disabilities within the meaning of the ADA. Mr. Drinkwater has a physical impairment that substantially limits major life activities including hearing, concentrating, thinking and communicating. 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

9. Defendant Trader Joe's Company is a corporation formed in California and has its principal place of business in Monrovia, California. Trader Joe's has more than 500 retail locations in the United States, and is a "grocery store" place of public

accommodation as defined under the Title III of the ADA. U.S.C. § 12181(7)(E). Trader Joe's  has control over the policies and procedures of its stores and the practices of its employees, including implementing accommodations for disabled people under Title III of the ADA.

10. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the business, or their relative responsibilities in causing the discrimination on the basis of disability that is the subject of this Complaint. Trader Joe's is a place of public accommodation and commercial facilities are to be designed, constructed, and altered in compliance with the Americans with Disabilities Act. DOES 1 through 10, inclusive, are responsible in some capacity for the events alleged herein and are necessary parties for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendant and DOES 1 through 10 are ascertained.

## **JURISDICITON AND VENUE**

11. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102, et seq.

12. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) and is founded on the fact that the Defendant Trader Joe's resides in this district.

## **FACTUAL ALLEGATIONS**

13. Defendant is among the largest grocery retailers in the United States. As Trader Joe's does not have an online store, does not contract with online grocery delivery service providers, and does not offer grocery pick up services, customers must shop in Trader Joe's brick-and-mortar stores.

14. Defendant provides a variety of goods and services that are not available at other grocery retailers. Trader Joe's states on its website that it is "committed to providing our customers outstanding value in the form of the best quality products at the best

everyday prices. Through our rewarding products and knowledgeable, friendly Crew Members, we have been transforming grocery shopping into a welcoming journey full of discovery and fun since 1967."

15. Trader Joe's sells many Trader Joe's private label products. While Trader Joe's does offer some non-Trader Joe's branded items, Trader Joe's private label products are unique and interesting, and its everyday basic products sold under the Trader Joe's label are staple grocery store items. Trader Joe's unique products are submitted to a rigorous tasting panel process, in which every aspect of quality is investigated in context of the price they can offer. If a product is assessed as an outstanding value, it becomes an essential part of the Trader Joe's shopping adventure. Customers shop at Trader Joe's because it is the only retailer that offers Trader's Joe's unique and interesting products, vetted and tested by Trader Joe's for quality and taste.

16. Trader Joe's only offers these goods and services at its brick-and-mortar stores, through an in-person shopping experience.

17. Trader Joe's stores use bells, check-out scanners, and music, making it difficult for hearing-impaired, disabled, customers to concentrate and communicate effectively in Trader Joe's stores and shop without anxiety or physical pain, preventing equal access to Trader Joe's stores.

18. Trader Joe's employes a bell system of communication for its employees. Trader Joe's employees ring the bells loudly for communication with other employees in the back rooms and other areas of the store. The bells register at 95dBC, but that can vary widely depending on how hard an employee rings it. Employees ring the bells at inconsistent times. The noise is unsafe, and an unexpected sound is for customers, especially hearing-impaired customers, standing right next to the bells.

19. In the summer of 2024, Trader Joe's Director of Words and Phrases and Clauses, revealed on the "Inside Trader Joe's Podcast" that decades after its implementation, they continue to use bells because of Defendant's "frugal nature." Trader

Joe's continues to use bells notwithstanding the harm these bells cause to disabled customers, because bells are "less expensive than a public address system, and … they sound a little more interesting," the Director of Words and Phrases and Clauses stated on the Podcast. Reasonable alternatives to bells exist such as single ear headset and microphone technology that would allow Crew Members to communicate at normal speaking level without affecting guests.

20. Trader Joe's also uses scanners at check out. These scanners beep every time an item is scanned for a customer purchase. The scanners register at 85 dBC on high volume and 75dBC on low volume. Trader Joe's can turn scanners off during shopping and the scanner will still scan retail items, or replace them with scanners that have a volume control that can be adjusted to much lower levels, including zero.

21. Defendant does not have a national policy to turn off music, scanners, or discontinue bell-use for disabled customers who experience communication and concentration difficulties, discomfort, anxiety and/or pain from these noises.

22. Defendant has failed to ensure that Trader Joe's stores permit accurate and effective communication for its customers by, among other things, providing sensory friendly shopping hours which would eliminate scanner beeps, bellringing, and music at a regularly scheduled interval.

23. The U.S. Department of Justice, Civil Rights Division (CRD), has published guidance regarding effective communications. The CRD notes that a covered entity must consider not only a person's disability, but "the person's method(s) of communication." By way of example, the CRD explains that "sign language interpreters are effective only

for people who use sign language. Other methods of communication . . . are needed for people who may have lost their hearing later in life and do not use sign language."[3]

24. The purpose of the effective communication rules is to ensure that the person with a communication disability can receive information from, and convey information to, the covered entity.

25. Notwithstanding that the ADA, U.S.C. § 12182(a), requires that businesses must provide people with disabilities an equal opportunity to access the goods or services that they offer, Defendant has denied Plaintiff equal access to its goods and services.

26. Plaintiff suffers from multiple hearing loss-related disabilities, including hyperacusis and tinnitus, and related side effects including post-traumatic stress disorder (PTSD), the result of a hearing injury which occurred over a decade ago.

27. Tinnitus is a physical condition in which a person experiences ringing or other noises in the ears, or more specifically the perception of sound for which there is no external source. While tinnitus can be hereditary, it can also be caused by an underlying condition, such as an ear injury, hearing loss, or problem with the circulatory system. The American Tinnitus Association reports that approximately 10 percent of the U.S. adult population—over 25 million Americans—experience some form of tinnitus. Roughly 5 million people struggle with burdensome chronic tinnitus, while 2 million find it debilitating.[4]

28. Hyperacusis is a reaction to moderately loud sounds. Hyperacusis comes in 4 types (loudness, annoyance, fear and pain) of which patients may have a combination of at the same time. The Job Accommodation Network service of the US Department of

---

[3] U.S. Department of Justice, Civil Rights Division, ADA Requirements: Effective Communication (Feb. 28, 2020), https://www.ada.gov/resources/effective-communication/.

[4] American Tinnitus Association, *Why Are My Ears Ringing?*, https://www.ata.org/about-tinnitus/why-are-my-ears-ringing/.

Labor notes, "Individuals with noise sensitivity may experience an adverse emotional response or even pain when exposed to the sounds that trigger their symptoms," and "may also have difficulty concentrating when exposed to noises that seem like normal environmental sounds to others."[5] There are many causes, including hereditary, environmental, due to injury, or comorbid with many other conditions. These sounds can cause physical pain to a person with hyperacusis, often resulting in severe impairment in which they are forced to live in isolation because some sounds cause harm. In addition to other symptoms, hyperacusis can cause a person to struggle with balance or experience seizures. For these reasons, people with hyperacusis often cannot function without precautionary measures taken in order to reduce auditory levels they are exposed to. It is estimated a minimum of 20 million adult Americans have some level of hyperacusis, and many are severely debilitated.[6]

29. There is no cure for tinnitus or hyperacusis and patients can suffer severe side effects including depression, distress, anxiety, sleep disturbances, PTSD and difficulties with communication, hearing, thinking, and concentrating.

30. These symptoms often intensify when a person anticipates having to interact in a space that they understand will aggravate the conditions. This constant stress in certain public places can negatively impact mental health and social life.

31. There is a confirmed link between hyperacusis and PTSD, a sound may be linked to the previous trauma which means that every time they hear the noise, it automatically triggers the fight or flight response and fear, anger, and anxiety, or can trigger a flashback.

---

[5] Job Accommodation Network, Ask JAN, https://askjan.org/limitations/Noise-Sensitivity.cfm

[6] James G. Coey and Orlando De Jesus, Hyperacusis, National Institute of Medicine (Aug. 23, 2023), https://www.ncbi.nlm.nih.gov/books/NBK557713/.

32. Tinnitus and hyperacusis both clearly fall within the ADA, 42 U.S.C. § 12102(4)(A), which states that the definition of disability "shall be construed in favor of broad coverage of individuals…to the maximum extent permitted by" law.

33. As the ADA defines disability broadly, many retailers and national companies are voluntarily creating sensory-friendly, quiet, and sensory inclusive hours for customers with tinnitus, hyperacusis, and other neurological and sensory processing disorders. For example, in November 2023, Walmart created every day sensory friendly hours. Walmart explained:

> We're excited to share we are bringing back sensory-friendly hours from 8 a.m. to 10 a.m. local time, not only on Saturdays, but every day at all Walmart U.S. and Puerto Rico stores, beginning Nov. 10, with no planned end date. During these hours, we hope our customers and associates will find the stores to be a little easier on the eyes and ears. These changes are thanks to those who shared their feedback on how their stores could help them feel like they belong.[7]

Aldi, which plays no music at its U.S. stores, tested quiet hours that include no amplification and reduced scanner beeps until the end of October 2024, and if successful, it will make these changes at all of Aldi's UK stores:

> Aldi is trialing sensory-friendly shopping hours in select stores. From next week until the end of October, almost 100 stores across Derbyshire, Nottinghamshire, Lincolnshire and Yorkshire will offer a quieter shopping experience every Tuesday between 6:30pm and 8.30pm.
>
> If successful, the initiative will be rolled out to all of Aldi's UK stores, with changes including stopping Tannoy announcements, quieter till scan sounds, and signposting the dedicated times to all customers.

[7] https://corporate.walmart.com/news/2023/11/07/small-changes-big-impact-sensory-friendly-hours-return

> **Vicky Metcalf, Diversity and Inclusion Director at Aldi UK, said:** "Our new sensory-friendly shopping hours aim to help those who prefer a quieter shopping experience or struggle with noisy environments.
>
> "We are committed to ensuring we are as accessible and inclusive as possible – both for shoppers and colleagues – and we look forward to receiving customer feedback on this trial to help inform our approach on a national level."[8]

In April 2024, Starbucks announced sensory-friendly accommodations:

> Two weeks ago Starbucks announced its new store design includes acoustic panels to help reduce reverberation and background noise. The goal: easier for employees to communicate with customers that both improves order accuracy and creates a more "inclusive" experience for guests, including those who may use devices (such as hearing aids) which can experience interference from "unwanted background noise and reverberation.[9]

The Starbucks website states: "Starbucks opening of their new store built with inclusive design elements is a big moment as we try to make retail spaces more accessible and inclusive," said Tony Coelho, a former U.S. congressman, primary author and sponsor of the Americans with Disabilities Act (ADA).[10] Other notable accommodations include:

- New Seasons Market: which has sensory-friendly shopping hours once a week at 18 out of 19 locations.
- Target: which has offered sensory-friendly holiday shopping hours from 7–8 AM at some Ohio stores. Target has also sold sensory-friendly home items for children since at least 2016.

---

[8] https://www.aldipresscentre.co.uk/business-news/aldi-trials-sensory-friendly-shopping-hours/

[9] https://www.bloomberg.com/news/articles/2024-04-10/starbucks-to-help-baristas-get-more-orders-right-by-reducing-noise

[10] https://stories.starbucks.com/press/2024/building-inclusive-spaces-starbucks-announces-new-accessibility-guidelines-for-its-u-s-store-portfolio/

- AMC Theatres: which has offered special monthly sensory-friendly film showings for over a decade. During these showings, the lights are turned up and the sound turned down

This is not a comprehensive list. Museums, grocery stores, box stores, movie theaters, and venues have proactively instituted changes to accommodate those with invisible disabilities. Changes include setting aside time during the business day when the lights are lower, softer music, eliminating sounds, employee training, internal policies, and regular sensory hours. These changes allow patrons with sensory disorders and neurological disabilities to participate more fully in normal life routines, which is a goal of the ADA.

34. Other companies are instituting accommodations nationally pursuant to litigation-related settlement agreements. Recently, Concentra, a national health care company that, through its affiliated clinicians, provides occupational medicine, urgent care, physical therapy and wellness services at more than 520 medical centers in 44 states, entered into a settlement agreement to resolve its pending Title III claims. The terms of the settlement agreement require Concentra to, *inter alia*:

- Provide appropriate auxiliary aids and services free of charge, including qualified interpreters, at all of its patient facilities to individuals who are deaf or hard of hearing whenever it is necessary to ensure effective communication for those individuals.
- Submit an effective communication policy, which includes a grievance procedure, to the U.S. Attorney's Office for approval and, following approval, will implement the policy nationwide and post the policy on its website.
- Designate a national ADA coordinator who will be responsible for implementing the terms of the settlement agreement and who will be the point person for investigating patient complaints as part of the newly established grievance process outlined in the effective communication policy.
- Provide ADA training to staff members nationwide.
- Compensate the complainant in the amount of $7,500. [11]

[11] https://www.justice.gov/usao-ct/pr/ada-settlement-ensures-access-deaf-and-hard-hearing-individuals-concentra-facilities

35. For over a decade Plaintiff regularly shopped at Trader Joe's locations in California, Arizona and elsewhere, until approximately July 2023. One of the reasons he chose to shop at Defendant's business is that they are able to control the volume for background music at the manager's desk near the front of the store, and as such, it is easy for Trader Joe's employees to turn off the music.

36. On or about July 9, 2023, Plaintiff visited Defendant's store on Grant Avenue in Tucson, Arizona, in order to purchase grocery items for his home. Plaintiff experienced pain that severely aggravated his condition as a result of the scanner beeps. Plaintiff requested that store employees temporarily turn down the volume down on the checkout scanning machines so he could complete his shopping. An employee, who was aware of Plaintiff's disabilities, told Plaintiff that Defendant Trader Joe's would not consider his request to lower the volume on the machines, that Trader Joe's could "only do so much," and that if the sound bothered him, he should wear earplugs. This intentional, reckless and/or negligent action caused Plaintiff pain and suffering.

37. The CDC, the National Institute of Occupational Safety & Health, and other experts advise that earplugs, earmuffs, or other ear protection is not recommended in situations where one has to communicate because it makes it difficult—sometimes impossible—to hear and communicate with others. For people with sound sensitivity, because earplugs deprive the auditory system of sounds, the ears compensate by making quieter sounds louder, which may make the ears even more sensitive. Trader Joe's refused to engage in further conversation regarding the scanner beeps.

38. On July 11, 2023, Plaintiff submitted a complaint to Trader Joe's regarding its policies to accommodate people with hearing disabilities, including Plaintiff.

39. On or about July 12, 2023, a Trader Joe's employee contacted Plaintiff. During this conversation, the employee stated that Trader Joe's previously received complaints and accommodation requests from other guests relating to the impact that background music has on their ability to shop at Trader Joe's.

40. On or about July 13, 2024, a Trader Joe's employee told Plaintiff the employee who refused to, and advised Trader Joe's would not, consider the request to lower the scanner volume had previously complained Plaintiff's accommodation requests interfered with his work.

41. On July 13, 2023, Plaintiff received an email from Kathryn Alice Cahan, General Counsel for Defendant Trader Joe's Company. On or about July 18, 2023 Plaintiff spoke with Ms. Cahan, who said she was aware of hyperacusis from prior experience as Trader Joe's General Counsel. Ms. Cahan informed Plaintiff that she had looked into the matter and hyperacusis was not covered under the ADA because it was not on a "list" of approved disabilities. On July 20, 2023, Ms. Cahan wrote to Plaintiff that "hyperacusis and tinnitus are not disabilities for which Title III of the ADA requires a public accommodation for customers." For that reason, Ms. Cahan claimed that Defendant's refusal to provide accommodations to those with hyperacusis and/or tinnitus was in compliance with the ADA.

42. Plaintiff opposed Trader Joe's declaration that hyperacusis and tinnitus are not disabilities as an "unlawful" corporate policy and invalid interpretation of "disability" under the ADA by sending Plaintiff further correspondence to Ms. Cahan supporting his disabilities, which are physical and mental impairments that substantially limit one or more of his major life activities. On or about July 25, 2023, Ms. Cahan spoke with Plaintiff and reiterated that hyperacusis and tinnitus were not ADA disabilities under Title III, and that Trader Joe's refusal to provide accommodations was in compliance with the ADA.

43. Trader Joe's retaliated against Plaintiff by refusing to further consider or discuss Plaintiff's accommodation requests. Due to Plaintiff's complaint to Trader Joe's corporate office, on or about July 14, 2023, an employee told Plaintiff that Trader Joe's employees had to be "good soldiers," and they would no longer discuss accommodation requests with Plaintiff.

44. On November 20, 2024, by letter to Trader Joe's litigation counsel, Plaintiff again requested that Trader Joe's accommodate his disability by either allowing him to request in advance that the store turn down the music and disengage the bells and scanner beeps while he shops, or alternatively, provide regular, sensory-friendly hours for shopping.

45. Trader Joe's has not responded to Plaintiff's reasonable request for an accommodation.

46. Defendant's actions violate the ADA because disabilities are defined broadly, and hearing loss is listed as an example of disabilities under the ADA.gov non-exclusive list of some disabilities. Furthermore, the General Counsel's position that hyperacusis and tinnitus are not covered under Title III denies Plaintiff's rights to have accommodation requests evaluated under the "readily achievable" ADA criteria and standards of U.S.C. § 12181(9), and the ADA protections against discrimination under U.S.C. § 12182.

47. The ADA regulations define "physical or mental impairment" to include, "hearing impairments." Hyperacusis and tinnitus are hearing impairments.

48. Plaintiff has a physical impairment that substantially limits one or more of his major life activities, including his ability to shop for food. Plaintiff is disabled in that tinnitus, hyperacusis both impair his hearing and cause hearing loss because Plaintiff is not able to hear, concentrate, think, communicate or stand when he is experiencing the effects from these conditions and related PTSD. These conditions cause Plaintiff physical pain and an acute negative mental response.

**<u>VIOLATION OF THE ADA, 42 U.S.C. §§ 12181 *et seq.*</u>**

46. The allegations contained in the preceding paragraphs are incorporated by reference.

47. Title III of the ADA and its implementing regulations prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

48. Title V of the ADA and its implementing regulations prohibit retaliatory discrimination because an individual has opposed an act or practice made unlawful under the ADA. 42 U.S.C. § 12203(a); 28 C.F.R. § 36.206(a).

49. Defendant is a private entity whose operations affect commerce; they own and/or operate retail service establishments, including Trader Joe's retail locations, that provide goods and services to members of the public. 42 U.S.C. §§ 12181(7), 12182(a); 28 C.F.R. §§ 36.104, 36.201(a).

50. Defendant offers goods and services at its retail locations, including groceries.

51. Plaintiff is a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C.§§ 12102 and 12131; 28 C.F.R § 35.104.

52. Defendant has discriminated and continues to discriminate against Plaintiff on the basis of his disability in the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, and accommodations, including denying Plaintiff the ability to shop at Defendant's stores. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

53. Specifically, Defendants have violated and continue to violate the ADA and its implementing regulations by:

a. Denying individuals who have disabilities, including Plaintiff John Drinkwater, the opportunity to participate in and benefit from the goods and services that are only provided at Trader Joe's retail outlets.

b. Providing individuals with disabilities, including Plaintiff John Drinkwater, an unequal opportunity to participate in or benefit from the goods and services.

c. Failing to take the necessary steps to ensure that individuals with disabilities, including Plaintiff John Drinkwater, are not excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303;

d. Utilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability or perpetuating the discrimination of others who are subject to common administrative control, 42 U.S.C. § 12182(D); 28 C.F.R. § 36.204; and

e. Engaging in retaliatory discrimination because Plaintiff opposed an "act or practice" that is "unlawful" under the ADA, 42 U.S.C. § 12203(a); 28 C.F.R. § 36.206(a).

54. As a result of Defendant's actions and/or omissions, individuals with disabilities, including Plaintiff, have experienced frustration, additional burden, and marginalization and are unable to shop for groceries at Defendant's stores.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

1. Grant judgment in favor of the Plaintiff and declare that Defendant's discriminatory actions and/or omissions as set forth in this Complaint violate Title III of the ADA, 42 U.S.C. §§ 12181-12189 and Title V of the ADA, 42 U.S.C. § 12203.

2. Enjoin Defendant, along with their officers, agents, and employees, and all others in active concert or participation with them, from engaging in discriminatory acts and/or omissions against individuals with disabilities

3. Order Defendant to:

a. Comply with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181-12189, and 28 C.F.R. pt. 36;

b. Take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiff to the position that he or she would have been in but for the Defendant's conduct; and

c. Take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

4. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205.

5. For such and other further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 25, 2025

GRIME LAW, LLP

By: ______________________

Dylan D. Grimes,
Susana C. Cendejas,
Attorneys for Plaintiff