Susana C. Cendejas (SBN 236316)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
11846 Ventura Blvd., Ste. 200
Studio City, CA 91604
Telephone: (310) 747-5095
scendejas@grimelaw.com
dgrimes@grimelaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTER DIVISION

| | |
|---|---|
| JOHN DRINKWATER,<br>            Plaintiff,<br>v.<br><br>TRADER JOE'S COMPANY, AND DOES 1-10,<br>            Defendants. | Case No. 2:25-cv-02617-FLA-ADS<br><br>**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE WHY THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIM**<br><br>The Honorable Fernando L. Aenlle−Rocha<br>Complaint Filed:      March 25, 2025<br>Discovery Cutoff:    Not Set<br>Pretrial-Conference: Not Set<br>Trial Date:              Not Set |

**Plaintiff's Response to Order to Show Cause Why the Court Should Exercise
Supplemental Jurisdiction over State Law Claim**

Plaintiff, John Drinkwater, by and through his undersigned counsel, hereby responds to the Court's Order to Show Cause issued on April 8, 2025 and states as follows:

## I.   INTRODUCTION & BACKGROUND

The Court should exercise supplemental jurisdiction over this matter because:

1.   The Court has original jurisdiction over Plaintiff's only claim, his Americans with Disabilities Act ("ADA") claim;

2.   There are no novel or complex issues of State law;

3.   This suit is not alleged construction access violations;

4.   Plaintiff is not a "high frequency" litigant.

Plaintiff filed this suit against Trader Joe's Company ("Trader Joe's") *See generally* Complaint, ECF No. 1 ("Compl."). Plaintiff is physically disabled with hearing-related disabilities, that include hearing loss, hyperacusis and tinnitus, and related side effects including post-traumatic stress disorder (PTSD). Compl. ¶ 26. Plaintiff cannot access Defendant's stores, enjoy its services, or take advantage of the benefits of in-person grocery shopping due to his disability. *Id.* ¶¶ 5, 7.  On the basis of these barriers, Plaintiff asserts a claim under the federal ADA. Compl. ¶¶ 46-54.

Plaintiff's suit is not related to construction access. Plaintiff's suit is solely related to Trader Joe's refusal to respond to and grant a reasonable accommodation to his disability by either allowing him to request in advance that the store turn down the music and disengage the bells and scanner beeps while he shops, or alternatively, provide regular, sensory-friendly hours for shopping. Compl. ¶¶ 44-45. Plaintiff seeks declaratory relief and injunctive relief, but he has not requested statutory damages or pled a state-law based claim.

Plaintiff is not a high frequency litigant. Declaration of John Drinkwater ("Drinkwater Decl.") ¶¶ 4-5. This lawsuit presents the first time Plaintiff has filed or made a claim of this nature. *Id.* ¶ 4.

## II. DISCUSSION

Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim" if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

While the presence of any of these factors will authorize the Court to decline to exercise supplemental jurisdiction over state-law claims, the Court's discretion "is informed by the . . . values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

### A. The Court Should Exercise Supplemental Jurisdiction since it has Original Jurisdiction over Plaintiff's Claim.

Under 28 U.S.C. § 1367 ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004).

1  "The district courts shall have original jurisdiction of all civil actions arising
2  under the… laws… of the United States." 28 U.S.C. § 1331. Here, Plaintiff has filed
3  suit under the Americans with Disabilities Act, a federal statute. Accordingly, the
4  Court has original jurisdiction, as the case is a civil action arising under United States
5  law.

6  **B.** **The State Claim Is so Related It Forms Part of the Same Case or**
7  **Controversy.**

8  Under Cal. Civ. Code section 51 subsection (f), "The Unruh Act provides that
9  a violation of the ADA is a violation of the Unruh Act." Any finding by the Court that
10 Trader Joe's has violated the Unruh Act would solely be based on Trader Joe's
11 violation of the ADA as alleged in the Complaint. In other words, the violation of the
12 ADA is a per se violation of Unruh. Thus, the ADA and Unruh Acts are inextricably
13 intertwined. The Parties are identical. The witnesses are identical. All the
14 documentary evidence (photographs, measurements, bank records, policies, etc.) are
15 identical. All the case law, regulatory material, regulations, and accessibility
16 standards necessary to demonstrate liability under are identical. Plaintiff's counsel is
17 not aware of a federal and state claim more intertwined than the ADA/Unruh pair.

18 Given the per se nature of the Unruh claim and that fact that Plaintiff has only
19 pled an ADA violation, the claims form part of the same case or controversy.

20 **C.** **Plaintiff Presents No Novel or Complex Issue of State Law**

21 Though some courts previously found inclusion of an Unruh Act violation in
22 an ADA suit to present novel or complex legal issues best left to state courts, most of
23 these cases centered on whether Unruh requires proof of intentional discrimination, a
24 now resolved question. *See, e.g., Harris v. Capital Growth Investors XIV*, 52 Cal.3d
25 1142 (1991) and *Gunther v. Lin*, 144 Cal.App.4th 223 (2006), both overruled by
26 *Munson v. Del Taco, Inc.*, 46 Cal.4th 661 (2009).

27
28

1    Courts have consistently rejected the many other arguments raised on this topic.

2    To borrow the phrasing of one court, most examples "are either irrelevant or

3    erroneous." *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176, 1193 (E.D. Cal.

4    2015) (rejecting the argument that an Unruh claim over a barrier raises a novel or

5    complex issue of state court). The bottom line is that "courts routinely exercise

6    jurisdiction over supplemental claims under [Unruh], as these types of claims do not

7    generally raise novel or complex issues of state law." *Kohler v. Islands Restaurants,*

8    *LP*, 956 F. Supp. 2d 1170, 1175 (S.D. Cal. 2013) (collecting cases, including a Ninth

9    Circuit case).

10    **D.    Unruh Does Not Predominate over Plaintiff's ADA Claim.**

11    As stated above, the incident that forms the basis of Plaintiff's ADA claim and

12    any violation of the Unruh Act are identical because a violation of the ADA is a per

13    se violation of the Unruh Act. The parties are identical. The witnesses are identical.

14    All the documentary evidence (photographs, measurements, bank records, policies,

15    etc.) are identical. All the case law, regulatory material, regulations, and accessibility

16    standards necessary to demonstrate liability under both claims are identical. Proving

17    up the ADA claim is the same work and same effort as proving up the Unruh claim.

18    As this Court has previously summarized:

19    The state-law claims do not substantially predominate in terms of proof.

20    Indeed, because the claims are mostly based on ADA violations, the

21    proof for those claims is identical to that needed to prove violation of the

22    ADA. For the state-law claims, Plaintiff need only make an additional

23    showing of the particular "occasions" on which he encountered the

24    barriers or was deterred from visiting the restaurant because of the

25    barriers in order to make out his claims for statutory damages. To be

26    sure, the availability of damages under state law means that the state-law

27    claims present a slightly larger scope of issues and offer more

28

-4-                    Case No. 2:25-cv-02617-FLA-ADS

PLAINTIFF'S RESPONSE TO OSC RE: SUPPLEMENTAL JURISDICTION

1    comprehensive remedies. Nonetheless, the Court does not find that this

2    causes the state-law claims to substantially predominate this litigation.

3  *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011).

4    Moreover, the mere fact that the Unruh claim has an additional remedy does

5  not mean that it "substantially predominates" over the case. "Other than the

6  availability of statutory damages under state law, the state and federal claims are

7  identical. The burdens of proof and standards of liability are the same. Indeed, the

8  Unruh Act specifically provides that a violation under the ADA also constitutes a

9  violation of the Unruh Act." *Moore*, 85 F.Supp.3d at 1194 (finding that an Unruh

10  claim for statutory damages does not substantially predominate over the federal ADA

11  claim; *see also Schoors v. Seaport Village Operating Co., LLC*, 2017 WL 1807954,

12  (S.D. Cal. May 5, 2017).

13    Here, it is hard to reach a different conclusion. Plaintiff's federal law claims

14  "involve the identical nucleus of operative facts, and require a very similar, if not

15  identical, showing in order to succeed" as the per se Unruh violation. *Delgado v.*

16  *Orchard Supply Hardware Corp.*, 826 F. Supp. 2d 1208, 1221 (E.D. Cal. 2011)

17  (finding no substantial predominance). This court should not decline jurisdiction on

18  the basis that a finding of an ADA violation is a per se Unruh violation.

19    Moreover, Plaintiff's claims arise out of his shopping experience in Arizona

20  and Trader Joe's polices. Plaintiff alleges that Defendant has discriminated against

21  Plaintiff. Compl. ¶ 7. Plaintiff further alleges that Defendant has a policy of

22  discriminating against individuals with disabilities, including those with hearing

23  loss and hearing-related disabilities, who experience interference from unwanted

24  background noise, acute noise, reverberation, and require noise reduction, and

25  therefore has engaged in a pattern or practice of discrimination. *Id.* Such

26  discrimination raises issues of general public importance and present federal questions

27  under the ADA. *Id.* Plaintiff seeks relief available under the ADA, including

28

PLAINTIFF'S RESPONSE TO OSC RE: SUPPLEMENTAL JURISDICTION

declaratory and injunctive relief. *Id.* Plaintiff does not seek statutory damages under the Unruh Act. *See generally,* Compl. Plaintiff is not even making a claim for a statutory penalty.[1] Thus, a per se Unruh violation simply does not substantially predominate.

      More importantly, even when substantial predominance is found, the Court is required to take the next step and consider the impact of declining or exercising supplemental jurisdiction: the "justification" underlying the decision whether to maintain supplemental jurisdiction or dismiss claims, "lies in considerations of judicial economy, convenience and fairness to litigants…" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In fact, the Courts have recognized that judicial economy is the "essential policy behind the modern doctrine of pendent jurisdiction…" *Graf v. Elgin, J. & E. Ry.*, 790 F.2d 1341, 1347–48 (7th Cir.1986). As the Supreme Court noted: the "commonsense policy of pendent jurisdiction" is "the conservation of judicial energy and the avoidance of multiplicity of litigation." *Rosado v. Wyman*, 397 U.S. 397, 405 (1970).

      Here, if this Court were to decline to exercise supplemental jurisdiction over whether Defendant's conduct is a per se violation of the Unruh Act, it would result in the Plaintiff pursuing this question in state court after prosecuting the ADA claim in federal court. Given that the Plaintiff's state claim is predicated upon a finding that the ADA has been violated, this means that almost identical cases would be prosecuted in two different forums. The *Delgado* court reasoned:

> Here, the claims arise from a common nucleus of operative facts. Both
> the federal and state law claims are based upon architectural barriers

---

[1] Encountering an ADA barrier is not only the standard for an ADA violation but is also the standard for recovery of statutory damages. "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." (*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

1    which infringe upon the accessibility to the OSH Store. Accordingly, this

2    Court has supplemental jurisdiction over the state law claims. The Court

3    will exercise supplemental jurisdiction over the state law claims. Here,

4    the state issues are not unsettled or novel and complex. Plaintiff's state

5    and federal law claim involve the identical nucleus of operative facts,

6    and require a very similar, if not identical, showing in order to succeed.

7    If this court forced plaintiff to pursue his state law claims in state court,

8    the result would be two highly duplicative trials, constituting an

9    unnecessary expenditure of plaintiff's, defendant's, and the two courts'

10    resources. As a practical matter, plaintiff's state law claims for damages

11    may be the driving force behind this action. To rule as OSH proposes,

12    however, would effectively preclude a district court from ever asserting

13    supplemental jurisdiction over a state law claim under the Unruh Act.

14    *Delgado*, 826 F. Supp. at 1221.

15        *Kohler* concluded that fairness favored keeping the Unruh claim in federal

16    court "rather than in a separate, and largely redundant, state-court suit." *Kohler*, 794

17    F. Supp. 2d at 1096. Another framing of the analysis states that supplemental

18    jurisdiction should be exercised to avoid "two parallel proceedings, one in federal

19    court and one in the state system." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780,

20    787 (3d Cir. 1995). Here, the principles of judicial economy and fairness encourage

21    the Court's exercise of supplemental jurisdiction regarding this narrow issue.

22        In a recent opinion, the Ninth Circuit "agreed with the district court that the

23    extraordinary situation created by the unique confluence of California rules involved

24    here, which has led to systemic changes in where such cases are filed, presents

25    "exceptional circumstances" that authorize consideration, on a case-by-case basis, of

26    whether the ""principles of economy, convenience, fairness, and comity which

27    underlie the pendent jurisdiction doctrine'" warrant declining supplemental

28

PLAINTIFF'S RESPONSE TO OSC RE: SUPPLEMENTAL JURISDICTION

1   jurisdiction." *Arroyo v. Rosas*, 19 F.4th 1202, 1210-11 (9th Cir. 2021) (referring to

2   these considerations as the "*Gibbs* values") (citing *International Coll. of Surgeons*,

3   522 U.S. at 172–73, 118 S.Ct. 523 (citation omitted); *Acri v. Varian Assocs., Inc.*, 114

4   F.3d 999, 1001 (9th Cir. 1997) (en banc)). In *Gibbs*, the Court noted that even in

5   circumstances where the federal claim has been lost, the Court may want to maintain

6   supplemental jurisdiction where the state claim is so closely intertwined with the

7   federal claims: "There may, on the other hand, be situations in which the state claim

8   is so closely tied to questions of federal policy that the argument for exercise of

9   pendent jurisdiction is particularly strong." *Gibbs*, 383 U.S. at 727.

10       Although some courts have declined supplemental jurisdiction under a

11   "substantial predominance" standard, those decisions are scattered and cannot

12   withstand serious scrutiny. But, more importantly, those other decisions never address

13   the factors that the Supreme Court have said are essential, namely economy,

14   convenience, fairness, and comity. As the *Moore* court stated, those decisions, "failed

15   to address how declining jurisdiction served these the values of economy,

16   convenience, fairness, and comity." *Moore*, 85 F.Supp.3d at 1194. It is hard to argue

17   with the court's conclusion in *Moore* that: "the Court's exercise of supplemental

18   jurisdiction would best advance economy, convenience, fairness, and comity. The

19   state and federal claims are so intertwined that it makes little sense to decline

20   supplemental jurisdiction. To do so would create the danger of multiple suits, courts

21   rushing to judgment, increased litigation costs, and wasted judicial resources." *Id*.

22       The Court is not just considering a calendar clearing exercise here. Were the

23   Court to deny federal jurisdiction to the question of whether there is a per se Unruh

24   Act violation, Plaintiff would have to litigate this parallel issue in state court or

25   abandon the right to file well-pleaded and meritorious claims in federal court entirely.

26   Plaintiff's state claim is predicated on adjudication of the federal claim, over which

27   this Court has original jurisdiction. This puts Plaintiff's claims in a complicated

28

1  position, as the state court claim cannot reasonably be resolved without final

2  resolution of the federal case, or risk inconsistent decisions on identical facts.

3        **E.        There Are No Other Compelling Reasons for Declining Jurisdiction.**

4        The Minute Order for the OSC states that "stricter pleading standard requires a

5  plaintiff bringing construction access claims to file a verified complaint alleging

6  specific facts concerning the plaintiff's claim, including the specific barriers

7  encountered or how the plaintiff was deterred and each date on which the plaintiff

8  encountered each barrier or was deterred." Order to Show Cause 2, ECF No. 12

9  ("OSC"). "'Construction related accessibility claim' means any civil claim in a civil

10  action with respect to a place of public accommodation, including, but not limited to,

11  a claim brought under [Cal. Civ. Code] Section 51, 54, 54.1, or 55, based wholly or

12  in part on an alleged violation of any construction related accessibility standard, as

13  defined in paragraph (6)." Cal. Civ. Code § 55.52(a)(1).

14        "Construction related accessibility standard" means a provision, standard, or

15        regulation under state or federal law requiring compliance with standards for

16        making new construction and existing facilities accessible to persons with

17        disabilities, including, but not limited to, any provision, standard, or regulation

18        set forth in Section 51, 54, 54.1, or 55 of this code, Section 19955.55 of the

19        Health and Safety Code, the California Building Standards Code (Title 24 of

20        the California Code of Regulations), the federal Americans with Disabilities

21        Act of 1990 (Public Law 101336; 42 U.S.C. Sec. 12101 et seq.), and the federal

22        Americans with Disability Act Accessibility Guidelines (Appendix A to Part

23        36, of Title 28, of the Code of Federal Regulations).

24  Cal. Civ. Code § 55.52(a)(6).

25        Plaintiff's suit is not related to construction-related accessibility standards, and

26  he is not making any demand for new construction or modification of existing

27  facilities. Plaintiff's suit is solely related to Trader Joe's refusal to respond to and

28

PLAINTIFF'S RESPONSE TO OSC RE: SUPPLEMENTAL JURISDICTION

1    grant a reasonable accommodation to Plaintiff's disability by either allowing him to

2    request in advance that the store turn down the music and disengage the bells and

3    scanner beeps while he shops or provide regular, sensory-friendly hours for shopping.

4        Similarly, Plaintiff and his counsel are not high-frequency litigants. "High-

5    frequency litigant" is defined as "a person … who utilizes court resources in actions

6    arising from alleged construction-related access violations at such a high level that it

7    is appropriate that additional safeguards apply so as to ensure that the claims are

8    warranted." Cal. Civ. Code § 425.55(b). This means that Plaintiff has filed "10 or

9    more complaints alleging a construction-related accessibility violation within the 12-

10   month period immediately preceding the filing of the current complaint alleging a

11   construction-related accessibility violation." Cal. Civ. Code § 425.55(b)(1). "High-

12   frequency litigant" also means an "attorney who has represented as attorney of record

13   10 or more high-frequency litigant plaintiffs in actions that were resolved within the

14   12-month period immediately preceding the filing of the current complaint alleging a

15   construction-related accessibility violation." Here, neither Plaintiff nor his counsel

16   meet this definition. This is Plaintiff's second disability-related case ever. Drinkwater

17   Decl. ¶ 4; Declaration of Dylan Grimes (Grimes Decl.) ¶¶ 3-5. This case does not

18   raise a construction-related access claim as discussed above. Plaintiff's counsel also

19   does not meet the definition of high-frequency litigant. Grimes Decl. ¶ 5.

20   **III.    CONCLUSION**

21       Plaintiff respectfully requests this Court to continue to exercise supplemental

22   jurisdiction over any question regarding an ancillary violation of the Unruh Act

23   because all factors weigh in favor of supplemental jurisdiction. Dismissing this action

24   would ignore the notions of fairness, judicial economy, and convenience that are the

25   cornerstone of the analysis about supplemental jurisdiction. Plaintiff's claims are

26   premised on a violation of the ADA and Plaintiff does not seek statutory damages,

27   such that his Unruh Act claim does not predominate over the ADA claim.

28

1    Dated:  April 22, 2025                    GRIME LAW LLP

2

3                                        By

4                                             *Attorneys for Plaintiff*
5                                             SUSANA C. CENDEJAS
                                              DYLAN D. GRIMES
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO OSC RE: SUPPLEMENTAL JURISDICTION